**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SCOTT FRANKLIN, JR., derivatively on behalf of SEALED AIR CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>EDWARD L. DOHENY, JÉRÔME A. PÉRIBÈRE, CAROL P. LOWE, WILLIAM G. STIEHL, MICHAEL CHU, LAWRENCE R. CODEY, PATRICK DUFF, HENRY R. KEIZER, JACQUELINE P. KOSECOFF, NEIL LUSTIG, KENNETH P. MANNING, WILLIAM J. MARINO, RICHARD L. WAMBOLD, AND JERRY R. WHITAKER,<br><br>    Defendants,<br><br>  and<br><br>SEALED AIR CORPORATION,<br><br>    Nominal Defendant. | C.A. No. 20-53-RGA |

## REPORT AND RECOMMENDATION

Plaintiff Scott Franklin, Jr., ("Franklin") brought this derivative action on behalf of Sealed Air Corporation ("Sealed Air") against several current and former directors (collectively, "Defendants"). Defendants moved to dismiss, and nominal defendant Sealed Air joined the motion. (D.I. 23, 25.) I held a hearing on the motion on May 17, 2022. ("Tr. __.") For the reasons announced from the bench on May 18, 2022, I recommend that Defendants' motion be GRANTED.

## I.    LEGAL STANDARDS

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A possibility of relief is not enough.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint, I must assume all "well-pleaded facts" are true but need not assume the truth of legal conclusions.  *Id.* at 679.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558 (internal quotation marks omitted).

## II.   DISCUSSION

My Report and Recommendation was announced from the bench on May 18, 2022, as follows:

> This is my Report and Recommendation on Defendants' Motion to Dismiss.[1]
>
> I will summarize the reasons for my recommendation in a moment.  Before I do, I want to be clear that my failure to address a particular argument advanced by a party does not mean that I did not consider it. We have carefully considered the operative complaint, the parties' briefs and exhibits, and the arguments made at yesterday's hearing.[2]  We will not be issuing a separate report, but we will issue a written document incorporating what I am about to say and a statement of the applicable legal standard.

---

[1] (D.I. 23.)

[2] (D.I. 1 ("Compl.") ¶¶ 24, 25, 27, 30; Tr.)

For the following reasons, Defendants' motion should be granted.

Sealed Air Corporation sells packaging materials such as Bubble Wrap. Scott Franklin, Jr., owns Sealed Air stock.[3] He brought this suit on behalf of Sealed Air, alleging that a number of current and former directors breached their fiduciary duties under state law and made misrepresentations and omissions in violation of federal securities laws.[4]

Franklin says that, in 2014, Sealed Air took an improper tax deduction and employed a flawed process to select an independent auditor. In 2014, Sealed Air recorded a loss of $1.49 billion to settle liabilities from the use of asbestos by its predecessor.[5] The company carried back the loss ten years. In connection with that loss, it claimed a $247 million tax refund and a $175 million deferred tax asset. The refund and offset were disclosed in a February 2015 press release and in the company's 2014 10-K.[6]

Sealed Air's independent auditor, KPMG, audited the 2014 10-K and did not flag the tax treatment as improper.[7] In November 2014, the company announced that, following a "competitive search process," its Audit Committee had voted to replace KPMG with Ernst & Young for fiscal year 2015.[8] According to Franklin, the search process was not "competitive" because it was rigged: Sealed Air's Chief Accounting Officer, William G. Stiehl, had colluded with Ernst & Young to help it get selected.[9]

Later, in 2015, Sealed Air disclosed that the IRS indicated that it intended to disallow the tax deduction but that the company thought it had a meritorious argument and intended to fight for its

---

[3] (Compl. ¶¶ 2, 29, 97.)

[4] (*Id.* ¶¶ 30, 31, 42, 45, 48, 51, 54, 57, 60, 63, 66, 69, 72–82, 214–57.)

[5] (*Id.* ¶¶ 6, 98, 102.)

[6] (*Id.* ¶¶ 103, 107–08.)

[7] (*See id.* ¶¶ 107–08.)

[8] (*Id.* ¶ 106.)

[9] (*Id.* ¶ 165; *see also* D.I. 24, Ex. 17 ¶¶ 14–47.)

deduction.[10]   Franklin thinks that the tax deduction was improper and was somehow related to the company's decision to replace its longtime auditor, KPMG, with Ernst & Young in 2015, but Franklin's complaint is light on facts connecting the two.

In any event, Franklin contends that the director Defendants knew about both improprieties and concealed them for years. During that time, some of the same director Defendants caused Sealed Air to buy back some of its stock.[11]   Because the company's stock price at the time did not reflect the concealed wrongdoing, Franklin says, the company overpaid for its own stock.  In count two of his complaint, Franklin contends that the director Defendants' conduct violated § 10(b) of the Exchange Act, which prohibits making material misrepresentations and omissions in connection with a securities trade.[12]

In count one of his complaint, Franklin contends that Defendants violated § 14(a) of the Exchange Act. Section 14(a) makes it unlawful for anyone to solicit proxies in contravention of SEC rules, and SEC Rule 14a-9 prohibits solicitations containing material misrepresentations or omissions.[13]   Franklin says that Sealed Air's 2017 and 2018 proxy statements violated § 14(a) because they failed to mention the improprieties with respect to the tax deduction and selection of Ernst & Young, that those improprieties caused the company's financial statements to be incorrect, that the company "failed to maintain internal controls," and that some of the Defendant directors had violated the company's Code of Conduct.[14]   In count three, Franklin seeks to hold the director Defendants also responsible under § 20(a) of the Exchange Act, which makes control persons jointly and severally liable for Exchange Act violations.[15]   The rest of Franklin's claims are under state law.

---

[10] (Compl. ¶ 121.)

[11] (*Id.* ¶¶ 167–84.)

[12] 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

[13] 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a).

[14] (Compl. ¶¶ 218–19.)

[15] 15 U.S.C. § 78t.

Franklin did not demand the board bring an action before filing this derivative suit himself. Defendants moved to dismiss the entire case. They argue that Franklin failed to demonstrate demand was excused and that his complaint fails to state a claim.[16]

I agree with Defendants that Franklin fails to state a federal claim. The federal claims should therefore be dismissed, and the Court should decline to exercise jurisdiction over the state law claims.

I start with the § 10(b) claim in count two. Section 10(b) bans deception.[17] Franklin says the director Defendants violated § 10(b) by deceiving Sealed Air into overpaying to buy back its own stock. But the complaint alleges that those buybacks were controlled by the same director Defendants.[18]

While it might be possible for one or more directors to violate § 10(b) by misleading the company's shareholders or by tricking other directors into taking action,[19] it is not possible for a director to deceive himself. Franklin's pleaded theory—that the defendant directors spread misleading information and then the same directors relied on and were deceived by that false information when they approved stock buy backs—is factually impossible and cannot lead to any relief under § 10(b).[20] I recommend that the claim under § 10(b) be dismissed.

---

[16] Fed. R. Civ. P. 12(b)(6), 23.1.

[17] To state a claim for securities fraud under § 10(b) and SEC Rule 10b-5, the complaint must plead "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014).

[18] (Compl. ¶¶ 167–84, 226, 229.)

[19] Plaintiff cited a line of cases in which some courts permitted derivative claims under § 10(b) under circumstances where a company's directors engaged in deceptive self-dealing. *See, e.g., In re Whitehall Jewellers, Inc. Shareholder Derivative Litigation*, No. 05-1050, 2006 WL 468012, at *11–12 (N.D. Ill. 2006). There are no such allegations here.

[20] *Elfers ex. rel. AbbVie, Inc. v. Gonzalez*, No. 20-213, 2020 WL 7264272, at *2–3 (D. Del. Dec. 10, 2020) (Bibas, J.); *cf. Kates ex. rel. MetLife, Inc. v. Kandarian*, No. 19-1266, 2020 WL 4287374, at *8 n.6 (D. Del. July 27, 2020), *adopted*, 2020 WL 12432745 (Sept. 8, 2020).

The complaint separately alleges in count one that the director Defendants are liable for misleading their shareholders: according to Franklin, [the directors] made false or misleading proxy statements in 2017 and 2018 that led the shareholders to reelect the directors, approve the executive compensation program, and ratify the company's retention of Ernst & Young as auditor. Franklin says that violated § 14(a) of the Exchange Act.

A § 14(a) claim requires that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." . . . .[21]

Section 14(a) claims (as well as § 10(b) claims) are subject to certain heightened pleading requirements in the Private Securities Litigation Reform Act [(PSLRA]. Among other things, the PSLRA requires the complaint to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."[22] The Court must dismiss a complaint that fails to satisfy those requirements.[23]

As an initial matter, Franklin's complaint arguably does not comply with the PSLRA because it does not specify a particular statement in the 2017 or 2018 proxy statement and explain why it's misleading. Count two alleges that the challenged proxy statements "made references to the Code of Conduct" but it doesn't specify any particular statements that were misleading.

In his briefing and at oral argument, Franklin pointed to two portions of the 2017 and 2018 proxy statements that, he says, are misleading because they omit material facts. First, each of the proxy

---

[21] *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 710 (3d Cir. 2020) (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)).

[22] 15 U.S.C. § 78u-4(b)(1); *Hysong v. Encore Energy Partners LP*, No. 11-781, 2011 WL 5509100, at *6 (D. Del. Nov. 10, 2011) ("[I]n order to plead facts to sufficiently allege . . . a section 14(a) claim, a plaintiff must identify a precise statement in the proxy that is either affirmatively misleading in and of itself, or is rendered misleading by operation of a materially omitted fact."); *see also Heinze v. Tesco Corp.*, 971 F.3d 475, 480 (5th Cir. 2020) ("Even for omission-based claims, the plaintiff must identify specific 'statements [in the proxy statement]' that are rendered 'false or misleading' by the alleged omissions.").

[23] 15 U.S.C. § 78u-4(b)(3)(A).

6

statements mentions that the company has a code of conduct and that it is posted on the company website.  Although his briefing is hardly a model of clarity, Franklin appears to suggest that the references to the code of conduct are misleading because the proxy statements omit that some people had violated the code.[24]

Second, the 2017 and 2018 proxy statements say the board had retained Ernst & Young as independent auditor for those fiscal years and they requested the shareholders to ratify the choice.  Franklin says that the statements were misleading because they did not mention that, years earlier, Ernst & Young had been selected through a flawed process for the alleged purpose of continuing to argue for the company's improper tax deduction, which resulted in the company misstating its cash flow.[25]

I'm not sure there is anything misleading about the first statement, but even if there is it is clearly immaterial.  I do not take Franklin to seriously contend that a reasonable shareholder would assume there were no ethics violations just because the company had a code of ethics.  While it is possible that shareholders would have removed some members of the board sooner had they known of their alleged misdeeds, it would not be because either proxy statement mentioned a code of ethics.[26]

Equally problematic is that Franklin has not pleaded facts showing how either statement was the "essential link" in any damage to the corporation.  Franklin points to three effects of the proxy solicitations: the reelection of the directors, the confirmation of the compensation plan, and the ratification of the retention of Ernst & Young as auditor.   In Franklin's theory they are interconnected.   Supposedly the directors were only reelected because Ernst & Young helped the company continue to "conceal" the impending loss of the claimed tax deduction for two more years (even though the company had previously disclosed the deduction and the IRS's intent to disallow it), and Ernst & Young was only retained because the directors were reelected.  I am highly skeptical that Franklin has pleaded facts that plausibly support those factual

---

[24] (Compl. ¶¶ 135, 152, 219; Tr. 32:20–33:7.)

[25] (Compl. ¶¶ 136, 153, 218; Tr. 33:17–34:6, 38:20–39:18.)

[26] *See UA Loc. 13 Pension Fund v. Sealed Air Corp.*, No. 19-10161, 2021 WL 2209921, at *3–5, *8 (S.D.N.Y. June 1, 2021) (dismissing § 10(b) claims against Sealed Air and Defendant Stiehl based on statements about code of ethics).

inferences.   But even if I accepted Franklin's theory, in the Third Circuit merely reelecting board members and paying them is not an "essential link" to financial loss from any mismanagement they commit.[27]

Nor has Franklin adequately explained how the shareholders' ratification of the company's 2017 and 2018 retention of Ernst & Young was an "essential link" in any damage to the corporation.   Indeed, Franklin has not even suggested that shareholder ratification was "essential" to the company's retention of Ernst & Young for those years.  I am unaware of any law or any provision in Sealed Air's charter that required the shareholders to ratify the board's choice of auditor, and Franklin did not cite any.[28] Absent pleaded facts suggesting that the shareholder's ratification of Ernst & Young was an "essential link" in a transaction that caused harm to the company, Franklin can't make out a § 14(a) claim based on it.[29]

For all of those reasons, I recommend that the claim under § 14(a) be dismissed.

Count three is the § 20(a) claim.  Liability under § 20(a) requires an underlying violation of a federal securities law or rule.[30] Because the complaint fails to state a predicate Exchange Act violation, it also fails to state a claim under § 20(a).  Accordingly, I recommend that Plaintiff's claim under § 20(a) be dismissed.

The remaining claims are based solely on Delaware law. Under 28 U.S.C. § 1367(c)(3), this Court may decline to exercise supplemental jurisdiction over the state law claims if it dismisses all the claims over which it has original jurisdiction.   "It '*must* decline' to exercise supplemental jurisdiction in such circumstances 'unless

---

[27] *Gen. Elec. Co. ex rel. Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992).

[28] (*See* Tr. 34:7–19; *see also* D.I. 24, Ex. 1 (2018 Proxy Statement) at 26 ("The Audit Committee has the ultimate authority and responsibility to select . . . the independent auditor.").)

[29] *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1099–06 (1991) (proxy requesting shareholder ratification of corporate action not "essential link" when ratification was not required for the challenged action); *Gen. Elec.*, 980 F.2d at 933 (proxy requesting election of directors not "essential link" to damage caused by their mismanagement).

[30] 15 U.S.C. § 78t(a); *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 505 (3d Cir. 2016).

considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'"[31]

Plaintiff has not argued that the Court should retain jurisdiction over the state law claims if the federal claims are dismissed, nor is there an affirmative justification for doing so. Because I recommend dismissing all the federal law claims, I recommend that the Court decline supplemental jurisdiction and dismiss Plaintiff's state law claims.

I have carefully considered the remaining arguments and cases cited by the parties and have determined that they do not warrant further discussion in light of the conclusions set forth above.

## III.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss should be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.   Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.   Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

**It is FURTHER ORDERED that if Plaintiff objects to any part of this Report & Recommendation, Plaintiff shall accompany his objection with a one-page letter to the Court setting forth whether he intends to amend his pleading if the Court adopts this Report &**

---

[31] *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original)).

**Recommendation and why that amendment would not be futile.  Defendants may file a one-page response letter at the same time as their responses to Plaintiff's objections.**

Dated: June 8, 2022

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE